STEPHEN M. GARCIA (SBN 123338)
sgarcia@lawgarcia.com
DAVID MEDBY (SBN 227401)
dmedby@lawgarcia.com
GARCIA, ARTIGLIERE & SCHADRACK
One World Trade Center, Suite 1950
Long Beach, CA 90831
Telephone:   (562) 216-5270
Facsimile:    (562) 216-5271

Attorneys for Plaintiff
SALLIE CWIK

MALCOLM A. HEINICKE (State Bar No. 194174)
malcolm.heinicke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street; Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant
HARVEST MANAGEMENT SUB LLC

Additional Counsel Listed on Next Page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLIE CWIK, individually and on behalf of others similarly situated,<br><br>          Plaintiff,<br><br>          vs.<br><br>HARVEST MANAGEMENT SUB LLC; and Does 1 through 50, inclusive,<br><br>          Defendants. | Case No. CV12-08309 DMG (JC)<br><br>**NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 14, 2013<br>Time:  9:30 a.m.<br>Courtroom: 7<br>Judge:  Hon. Dolly M. Gee |

DON HOWARTH (SBN 53783)
dhowarth@howarth-smith.com
SUZELLE M. SMITH (SBN 113992)
ssmith@howarth-smith.com
ARCHIBALD M. SMITH (SBN 283887)
asmith@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, California 90014
Telephone:   (213) 955-9400
Facsimile:    (213) 622-0791

Attorneys for Plaintiff
SALLIE CWIK

JEFFREY M. OSOFSKY (State Bar No. 268593)
jeff.osofsky@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant
HARVEST MANAGEMENT SUB LLC

1    TO THE COURT AND ALL INTERESTED PARTIES:

2    PLEASE TAKE NOTICE THAT on June 14, 2013, at 9:30 a.m. or as

3  soon thereafter as counsel may be heard, in the Courtroom of the Honorable Dolly

4  M. Gee, United States District Court for the Central District of California, located at

5  312 North Spring Street, Los Angeles, California, Plaintiff Sallie Cwik (herein

6  "Plaintiff"), and Defendant Harvest Management Sub LLC dba Holiday Retirement

7  (herein "Holiday"), will and hereby do jointly and respectfully move the Court to

8  provide preliminary approval of the proposed collective action settlement.

9  Specifically, the parties jointly and respectfully request that the Court (a) grant

10  preliminary approval for the proposed collective action settlement; (b) grant

11  conditional certification of the proposed class; (c) grant preliminary approval of the

12  requested attorneys' fees and Class Representative enhancement awards; (d)

13  authorize the mailing of the proposed class action notice to the class; and (e)

14  schedule a hearing on the final approval of the settlement.

15    The parties make this motion on the grounds that the proposed

16  settlement is fair, adequate and just.  To assure proper notice and due process, the

17  parties also request that they be authorized to provide the notice described in the

18  Stipulation Regarding Settlement of Collective Action.  This Motion is based upon

19  this Notice of Joint Motion and Joint Motion for Preliminary Approval of Collective

20  Actions Settlement, the Memorandum of Points and Authorities in Support Thereof,

21  the Declarations of David Rotman, Esq., Suzelle M. Smith, Esq., and David Medby,

22  Esq. in support thereof, the Stipulation Regarding Settlement of Collective Action

23  and the exhibits thereto lodged concurrently herewith, argument of counsel, the

24  complete files and records in the above-captioned matter, and such additional

25  matters as the Court may consider.

26  ///

27  ///

28

1   Date:  May 8, 2013                    GARCIA, ARTIGLIERE &
                                          SCHADRACK
2                                              STEPHEN M. GARCIA
                                               DAVID MEDBY
3

4                                         By:_____/s/ David Medby_____

5

6                                         Attorneys for Plaintiff SALLIE CWIK

7

8   Date:  May 8, 2013                    MUNGER, TOLLES & OLSON LLP
                                               MALCOLM A. HEINICKE
9                                              MARJA-LIISA OVERBECK
                                               JEFFREY M. OSOFSKY
10

11                                        By:_____/s/ Malcolm A. Heinicke_____

12

13                                        Attorneys for Defendant HARVEST
                                          MANAGEMENT SUB LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II.    PROCEDURAL BACKGROUND ...............................................................3

III.   OVERVIEW OF CLAIMS AND DEFENSES ................................................4

IV.   THE MEDIATION AND THE SETTLEMENT ...........................................7

V.    ARGUMENT ...........................................................................................11

     A.    Legal Standard. .............................................................................11

     B.    Procedure.........................................................................................13

     C.    The Parties' Settlement Falls Well Within The Range of Approval..........................................................................................14

VI.   CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................ 12

*Alberto v. GMRI, Inc.,*
252 F.R.D. 652 (E.D. Cal. 2008).......................................................... 13

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .............................................................................. 16

*Baldwin v. Trailer Inns, Inc.,*
266 F.3d 1104 (9th Cir. 2001).......................................................passim

*Bowman v. UBS Fin. Servs., Inc.,*
No. 04-3525, 2007 WL 1456037 (N.D. Cal. May 17, 2007) ............... 16

*Campanelli v. Hershey Co.,*
No. 08-1862, 2011 U.S. Dist. LEXIS 93166, 2011 WL 3583597 (N.D. Cal. May 4, 2011)...................................................................................................... 11

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992)............................................................. 11

*Davis v. J.P. Morgan Chase & Co.,*
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ............................................... 12

*Edwards v. City of Long Beach,*
467 F. Supp. 2d 986 (C.D. Cal. 2006).................................................. 11

*Fenn v. Hewlett-Packard Co.,*
No. 11-244, 2012 U.S. Dist. LEXIS 181586......................................... 11

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)........................................................ 12, 15

*In re Amino Acid Lysine Antitrust Litig.,*
MDL No. 1083, 1996 U.S. Dist. Lexis 5308 (N.D. Ill. Apr. 22, 1996) ........................... 13, 14

*In re Farmers Ins. Exch.,*
481 F.3d 1119 (9th Cir. 2007)............................................................... 5

*In re Gen. Motors Corp. Engine Interchange Litig.,*
594 F.2d 1106 (7th Cir. 1979).............................................................. 2

*In re Portal Software, Inc. Sec. Litig.,*
No. 03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................. 2

1

## TABLE OF AUTHORITIES
### (continued)

2
                                                                    **Page(s)**

3

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................... 2, 13, 14

4

*In re Traffic Exec. Ass'n–E. Railroads*,
   627 F.2d 631 (2d Cir.1980) ............................................................................. 12

5

*In re: Immune Response Secs. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................... 14

6

7

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*,
   No. 07-0362, 2009 U.S. Dist. LEXIS 101586, 2009 WL 3562871 ........................ 15

8

9

*Khanna v. Inter-Con Sec. Sys.*,
   No. 09-2214, 2012 U.S. Dist. LEXIS 137651, 2012 WL 4465558 (E.D. Cal. Sept. 25,
   2012)..................................................................................................... 11, 13

10

11

*La Parne v. Monex Deposit Co.*,
   No. 08-302, 2010 U.S. Dist. LEXIS 131029 (C.D. Cal. Nov. 29, 2010)................................ 12

12

13

*Lee v. Timberland Co.*,
   No. 07-2367, 2008 U.S. Dist. LEXIS 108098, 2008 WL 2492295 (N.D. Cal. June 19,
   2008)........................................................................................................ 11

14

15

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982)........................................................... 1, 11, 13, 14

16

17

*McCubbrey v. Boise Cascade Home & Land Corp.*,
   71 F.R.D. 62 (N.D. Cal. 1976) ........................................................................ 16

18

19

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 2

20

21

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ......................... 13

22

23

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)........................................................................... 15

24

*Sallie Cwik v. Harvest Management Sub LLC*,
   C.D. Cal. Case No. 12-08309 ............................................................................ 3

25

26

*Shea v. Ryla Teleservices*,
   No. 11-626, 2012 U.S. Dist. LEXIS 133304 (E.D. Cal. Sept. 18, 2012)................................ 11

27

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)........................................................................... 12

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Stevens v. Safeway, Inc.*,
   No. 05-1988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ........................ 1, 2, 13

*Weinberger v. Kendrick*,
   698 F.2d 61 (2nd Cir. 1982) .................................................................................. 14

*West v. Circle K Stores, Inc.*,
   No. 04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) .................................... 2

*White v. Nat'l Football League*,
   41 F.3d 402 (8th Cir. 1994) ................................................................................... 16

*Yue Zhou v. Wang's Rest.*,
   No. 05-0279, 2007 U.S. Dist. LEXIS 60683, 2007 WL 2298046 ......................... 14

*Yue Zhou v. Wang's Restaurant*,
   No. 05-279, 2006 U.S. Dist. LEXIS 84397 (N.D. Cal. Nov. 9, 2006) .................... 11

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) ...................................................................................................... 3, 4

29 U.S.C. § 216(c) ......................................................................................................... 11

**STATE STATUTES**

California Labor Code sections 2698 *et seq.* .............................................................. 10

**FEDERAL RULES**

Rule 23, Fed. R. Civ. P. 23(c)(2)(B) ........................................................... 2, 12, 13, 16

**FEDERAL REGULATIONS**

29 C.F.R. § 541.102 ....................................................................................................... 5

29 C.F.R. § 541.103 ....................................................................................................... 5

29 C.F.R. § 541.200 ....................................................................................................... 5

**OTHER AUTHORITIES**

2 Newberg On Class Actions,
   § 11.41 at 90 (4th ed. 2002) .................................................................................. 14

Manual for Complex Litigation (Fourth)
   § 21.632 at 320 ..................................................................................................... 13

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page(s)**

3

Manual for Complex Litigation Third (1997)
  § 30.41 ................................................................................................................ 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Sallie Cwik ("Plaintiff") brings this putative collective action claiming that Defendant Harvest Management Sub LLC dba Holiday Retirement ("Holiday") misclassified its residential Community Managers and Community Co-Managers ("Resident Managers") as "exempt" employees, and that as a result, these employees are entitled to unpaid overtime wages as well as other remedies.  Holiday has denied any wrongdoing or liability in this matter and maintains that it compensated its employees fairly and in accordance with the law.  Following significant investigation and information exchanges, the parties, with the assistance of experienced counsel and a well-respected mediator, reached a settlement, which is subject to Court approval.  The parties now jointly and respectfully request that this Court grant preliminary approval for the proposed collective action settlement filed with the Court on April 15, 2013 (Docket No. 38), authorize notice and schedule a final approval hearing.

In collective actions, as in class actions, the settling parties must seek Court approval.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness").  To obtain Court approval, the parties must "present to the court a proposed settlement" and, "[i]n reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute."  *Stevens v. Safeway, Inc.*, No. 05-1988, 2008 U.S. Dist. LEXIS 17119, at *13 (C.D. Cal. Feb. 25, 2008) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit . . . reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] we allow the district court to approve the settlement in order to promote the policy of

1   encouraging settlement of litigation")).  This standard is similar to that used in

2   evaluating settlements under Rule 23(e) of the Federal Rules of Civil Procedure,

3   where courts utilize a two-step process.  *Stevens*, 2008 U.S. Dist. LEXIS 17119 at

4   *13.  Under this two-step process, courts first "determine[ ] whether the proposed

5   settlement deserves preliminary approval."  *Nat'l Rural Telecomms. Coop. v.*

6   *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Then, "after notice is given to

7   class members, the Court determine[s] whether final approval is warranted."  *Id.*

8             Through the instant motion, the parties are seeking only preliminary

9   approval of the settlement.  Because the eventual final approval hearing will provide

10  the Court with another opportunity to review the settlement (after notice has been

11  provided), preliminary approval should be granted so long as the proposed

12  settlement is not "obviously deficient" and is "within the range of possible

13  approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D.

14  Cal. 2007); *see also In re Portal Software, Inc. Sec. Litig.*, No. 03-5138, 2007 WL

15  1991529, at *5-6 (N.D. Cal. June 30, 2007); *West v. Circle K Stores, Inc.*, No. 04-

16  0438, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006); *see also In re Gen.*

17  *Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979).

18            Here, the parties have undoubtedly made far more than the limited

19  showing necessary for preliminary approval.  The proposed settlement, which the

20  parties filed with the Court on April 15, 2013, sets forth all of the agreements

21  between Plaintiff and Holiday.  This settlement was reached following significant

22  investigation and through arms-length bargaining with the assistance and

23  considerable involvement of both experienced counsel and a respected mediator.

24  The proposed settlement will result in significant financial benefit to Participating

25  Claimants and it will <u>not</u> bind those putative plaintiffs who choose not to participate.

26  In addition, there is nothing to suggest that the fully disclosed agreement on attorney

27  fees, which is also subject to Court approval, is excessive; in fact, it is well within

28

1  the standards for such awards set by the Ninth Circuit.  Finally, the proposed form

2  of notice to the Class is more than adequate under pertinent standards.

3          Accordingly, the parties respectfully request that the Court (a) grant

4  preliminary approval for the proposed collective action settlement; (b) grant

5  conditional certification of the proposed settlement class; (c) grant preliminary

6  approval of the requested attorney fees and Class Representative enhancement

7  award; (d) authorize the mailing of the proposed class action notice; and (e)

8  schedule a "fairness hearing," *i.e.*, a hearing on the final approval of the settlement.

9  **II.    PROCEDURAL BACKGROUND**

10          On September 26, 2012, Plaintiff Sallie Cwik filed this putative

11  collective action against Holiday (now captioned *Sallie Cwik v. Harvest*

12  *Management Sub LLC*, C.D. Cal. Case No. 12-08309 DMG (JC)), alleging that

13  Holiday has misclassified its Resident Managers as "exempt" employees, *i.e.*,

14  employees who are exempt under pertinent law from premium overtime

15  requirements and other wage and hour requirements.

16          Holiday denies Plaintiff's allegations and contends that it properly

17  classified Resident Managers as exempt and compensated these Managers lawfully

18  and fairly.  On November 14, 2012, Holiday filed its answer denying all material

19  allegations asserted in the complaint.  On December 6, 2012, Plaintiff filed a Motion

20  for Conditional Collective Action Certification.  On December 14, 2012, Holiday

21  filed a Motion to Transfer Venue, seeking an order transferring venue in the

22  Litigation to the United States District Court for the District of Oregon pursuant to

23  28 U.S.C. § 1404(a).

24          With both motions on file, on December 11, 2012, counsel for the

25  parties met and conferred on the status of the case and possible settlement.

26  Following this discussion, the parties agreed to withdraw their motions without

27  prejudice and seek a stay of the case pending mediation.  The Court granted the

28  parties' requested stay and vacated both motions without prejudice.  At the

1   conclusion of this meditation, the parties executed a binding term sheet agreement.

2   At the time of the parties' mediation, forty-four (44) putative plaintiffs had opted-in

3   to the lawsuit.  A total of sixty-seven (67) individuals have now opted-in.

4   **III.**    **OVERVIEW OF CLAIMS AND DEFENSES**

5         As set forth in the complaint, Plaintiff alleges that a putative collective

6   action class of current and former employees holding the Resident Manager position

7   did not perform managerial tasks as a primary duty, and were therefore not

8   executive or administrative employees subject to statutory exemptions from

9   premium overtime and other requirements.  During the relevant time period,

10   approximately 3,300 individuals worked in the United States as salaried Resident

11   Managers.

12         Specifically, Plaintiff contends that these individuals perform non-

13   managerial resident assistance, housekeeping and maintenance work, and that such

14   duties do not qualify these employees for an exemption from premium overtime and

15   other wage and hour requirements.  As a result, Plaintiff claims that they are entitled

16   to payment for unpaid premium overtime wages as well as other remedies associated

17   with this alleged misclassification.

18         In support of her motion for conditional certification, Plaintiff

19   submitted thirty declarations from consenting plaintiffs in which they assert that

20   they did not perform certain managerial functions and also spent a good deal of their

21   time (a) working alongside other staff performing nonexempt housekeeping and

22   maintenance duties and (b) engaging in "on-site and off-site marketing of the

23   retirement community."  *See* Docket No. 23.  Plaintiff's declarations assert that

24   Resident Managers follow standardized procedures directed from corporate

25   headquarters and that, as a result, Resident Managers exercise little to no discretion

26   and spend the majority of their time performing non-managerial tasks, including

27   making coffee, assisting residents, and handling maintenance and housekeeping

28   issues.  *Id.*  From this, Plaintiff argues that the putative class members are similarly

situated because they were subject to a common policy or plan of categorically classifying them as exempt and failing to compensate them for hours over forty worked each work week.

Holiday disputes the allegation that Plaintiff and putative collective class members were misclassified as exempt employees, and asserts that they meet the qualifications for the executive exemption under applicable regulations and agency guidance.[1]  Specifically, Holiday contends that the current and former Resident Managers performed the precise sort of managerial duties that qualify them for the executive exemption, including management of the day-to-day operations of the residences; supervision and discipline of subordinate employees; implementation of company policies; and involvement in hiring and firing lower-level workers, including housekeeping and food service personnel.  *See* 29 C.F.R. § 541.103; 29 C.F.R. § 541.102.  As such, Holiday asserts that irrespective of whether Resident Managers spend some time on non-exempt tasks, the Resident Managers are properly classified as exempt and Plaintiff's claims for overtime pay and other misclassification remedies are unfounded.

Indeed, Holiday maintains that under the guidance provided by the Ninth Circuit on the issue of exempt classifications for residential managers, *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113-16 (9th Cir. 2001), its Resident Managers are properly classified as exempt.  In *Baldwin*, the Ninth Circuit found the plaintiff resident managers—two husband and wife management teams hired to run

---

[1] Additionally, and in the alternative, Holiday asserts that Plaintiff and other Resident Managers were properly classified as exempt administrative employees. Under federal law, an employee generally qualifies for the administrative exemption if his or her primary duty (1) consists of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; and (2) includes the exercise of discretion and independent judgment.  *See* 29 C.F.R. § 541.200; *In re Farmers Ins. Exch.*, 481 F.3d 1119, 1127 (9th Cir. 2007).

a recreational vehicle park—exempt and affirmed summary judgment even though the plaintiffs had shown that they spent ninety percent of their time on non-exempt functions. *Id.* at 1113. When holding as a matter of law that these employees were properly classified as managerial employees, the court rejected the notion that the exemption was lost simply because the managers, while on duty as such, spent the vast majority of their time performing manual labor. *See id.* at 1114. Instead, the court found the managers exempt because despite their significant manual labor (a) they were in charge of the day-to-day operations of the facility; (b) they were the "on-site representative[s]" of the company responsible for supervising other employees and implementing company policy; and (c) even though they "had to adhere to company policies, record completed tasks on checklists and [were] subject to . . . monthly inspection," they were free from daily supervision because the owner visited only once or twice a month. *Id.* at 1115-16. In light of the factual similarity between the residential managers in *Baldwin* and Holiday's Resident Managers, Holiday asserts that its Resident Managers are properly classified as exempt even if they perform some non-exempt work.

In addition, Holiday contends that Plaintiff's (and the declarants') assertion that Resident Managers perform largely the same (non-exempt) tasks at all communities does not square with the actual evidence on duties performed. Specifically, a recently conducted written survey of managers demonstrates that an overwhelming majority of the putative class members surveyed confirm that they have in fact been given and exercise managerial responsibility for tasks such as interviewing and making hiring recommendations; managing budgets and exercising discretion with respect to community expenditures; and overseeing employee scheduling, discipline and terminations. The surveyed managers also confirm that when they are on duty, it is their responsibility to be the ultimate decision maker of the day-to-day operations of the communities they manage. In short, there is

1  evidence of the diverse managerial tasks that the putative class members actually

2  perform, which many class members themselves have confirmed in writing.

3  The proposed settlement, if approved, will result in the dismissal with

4  prejudice of the litigation.  In other words, approval of the settlement will resolve

5  this entire action.

6  **IV.   THE MEDIATION AND THE SETTLEMENT**

7  Pursuant to this Court's order staying the parties' respective motions,

8  the parties met and conferred regarding settlement, and agreed to a mediation before

9  David Rotman, Esq.  Mr. Rotman is a professional mediator with significant

10 experience in wage and hour class actions.  *See* Declaration of David Rotman In

11 Support of Joint Motion For Preliminary Approval Of Collective Actions Settlement

12 ("Rotman Decl.") at ¶ 2.

13 In anticipation of this mediation, Plaintiff's counsel requested

14 numerous documents and data, which Holiday provided, including pertinent policy

15 documents and a redacted database of all pertinent payroll records.  On March 14,

16 2013, after the parties had exchanged significant information pertinent to the

17 lawsuit, the parties conducted a mediation session before Mr. Rotman and

18 eventually reached agreement on the basic terms of a settlement.  Through further

19 negotiations, the parties were able to agree upon and eventually execute the full

20 settlement agreement for which they are now seeking preliminary approval.  This

21 settlement was the product of protracted, arms-length negotiations.  *Id.* at ¶¶ 3-5.

22 The proposed settlement calls for the certification of a national class

23 consisting of all individuals who were employed by Holiday as Resident Managers

24 anywhere in the United States during either of the following time periods:  (A) if

25 they have opted into the Lawsuit, (i) the date three years prior to the date they have

26 opted into the Lawsuit and (ii) the Preliminary Order Date; or (B) if they have not

27 opted into the Lawsuit as of April 15, 2013, (i) the date three years prior to the

28 Preliminary Order Date through (ii) the Preliminary Order Date.  *See* Stipulation Re:

1   Settlement of Collective Action ("Stipulation"), Docket No. 38 (filed April 14,

2   2013), ¶¶ 1.1.2 & 1.1.4.

3          Under the terms of the Stipulation, each Class Member will receive a

4   notice in the form proposed.  *Id.* at ¶ 2.4.1.  Per the proposed settlement, the parties

5   will retain the professional claims administration firm of Rust Consulting, Inc. (the

6   "Claims Administrator") to perform the notice and claims administration procedures

7   in this matter.  *Id.* at ¶ 1.1.1.  The Class Notice will describe the litigation, the terms

8   of the settlement and the Class Member's options with regard to the proposed

9   settlement.  *Id.* at Exhibit 2.  The Class Notice will be sent, postage pre-paid, via

10  first class mail to the last known addresses of each class member.  *Id.* at ¶ 2.4.1.

11  Prior to mailing these class notices, the Claims Administrator will take systematic

12  measures to update any addresses that may have changed.  *Id.* at ¶¶ 1.1.13, 2.4.3,

13  2.4.6.  In addition, to the extent a notice is returned to the Claims Administrator, the

14  Claims Administrator will send the notice to any forwarding address provided.  *Id.*

15  at ¶ 2.4.9.

16         As explained thoroughly in the Class Notice, Class Members shall be

17  excluded from the Class unless they elect to "opt in" to the settlement class.  *Id.* at

18  Exhibit 2.  Class Members who do not "opt in" shall not be subject to the Judgment

19  and will be deemed to have never participated in this action.  *Id.* at ¶ 2.5.1.

20         Only these Class Members who timely "opt in" by completing,

21  executing and mailing an Opt In and Release Form (attached to Exhibit 2 as Form

22  A), will be subject to the Judgment and its associated release.  *Id.* at ¶¶ 2.5.1 &

23  2.7.1.  Upon the effective date of the Judgment, all Participating Claimants will be

24  deemed to have, and by operation of the Judgment will have, released Holiday and

25  its affiliates, owners and employees of all known or unknown claims relating to their

26  alleged misclassification as an exempt employee and all associated claims for

27  interest, penalties, fees and costs.  *Id.* at ¶¶ 1.1.31, 1.1.39 & 2.7.1.

28

Class Members who timely and properly submit a qualifying Opt-In and Release Form will become Participating Claimants, and only they will receive their individualized settlement sums. *Id.* at ¶¶ 1.1.4, 1.1.16, 1.1.22, 1.1.33, 1.1.36 & 2.6.1. To the extent a Class Member does not become a Participating Claimant, *i.e.*, he or she does not submit a qualifying Opt In and Release Form, then any settlement funds that would have been paid to him or her had he or she done so will remain the property of Holiday and not be paid. *Id.* at ¶¶ 2.1.3, 2.6.2.

Because the settlement sums received by Participating Claimants will represent a payment in settlement of claims for unpaid wages and associated remedies over the course of the relevant Class Period, the parties have structured the agreement so that the amount of each claimant's settlement payment will vary according to his or her length of the service during the relevant time period. Specifically, a Participating Claimant's settlement sum shall be calculated on a *pro rata* basis according to his or her number of Qualifying Work Weeks, *i.e.*, any calendar week during the Class Period for which a Class Member received payment for active work (as opposed to vacation or leave time) that the Class Member performed as a Resident Manager anywhere in the United States. *Id.* at ¶¶ 1.1.28, 1.1.30.

The Class Notice will advise Class Members of the pertinent formula, and the notice will be individualized to advise each Class Member of his or her specific settlement sum so that he or she can best evaluate the settlement and its financial implications. *Id.* at Exhibit 2.

The Maximum Settlement Amount, *i.e.*, the maximum amount that Holiday shall pay under the terms of the Stipulation is $7,500,000. The specific components of this Maximum Settlement Amount are: (a) the maximum gross amounts for settlement payments to Participating Claimants, which is $5,542,500; (b) the maximum gross amount for all Class Counsel's attorney fees, which is twenty-five percent (25%) of the maximum settlement amount (or $1,875,000); (c)

the maximum gross amount for counsel and the Class Representative's allowable litigation costs and associated expenses, which is $25,000; (d) the anticipated gross amount for Claims Administration costs, which is $50,000; (e) the maximum gross amount for the enhancement payment to be made by Holiday to the Class Representative, which is $5,000; and (f) payment to the California Labor Workforce Development Agency as part of the consideration for the release of claims under California Labor Code sections 2698 *et seq.*, which will be in the amount of $2,500. *Id.* at ¶ 1.1.15.

With regard to attorney fees, the parties have agreed that Class Counsel may request the Court to award the "benchmark" award of twenty-five percent (25%) of the maximum settlement amount or up to $1,875,000 in fees. *Id.* Holiday has agreed to a standard "stand-still" agreement, *i.e.*, it has agreed not to oppose this award, which is subject to Court review. *See id.* at ¶¶ 2.8.1. & 2.11.2. And, with regard to the enhancement award, the Stipulation calls for an additional payment of $5,000 to Plaintiff Sallie Cwik, again subject to Court approval. *Id.* at ¶ 2.8.2. This payment is in compensation for Plaintiff's efforts in this case, as well as her execution of a general release.

The Stipulation provides for a hearing to review final approval of the settlement. *See id.* at ¶¶ 1.1.21 & 2.5.7. The Class Notice will advise Class Members of this hearing and their chance to attend the hearing and make their views known. *See id.* Exhibit 2. At this hearing, the parties will address any issues raised by the Class Members or the notice process itself, and the Court will have a second opportunity to review the Stipulation in full. *See id.* ¶¶ 1.1.21, 2.5.6, & 2.5.7.

All of the terms of the proposed settlement are set forth in the Stipulation filed with the Court on April 15, 2013. The exhibits to the Stipulation include the proposed Class Notice and the proposed Judgment. The parties jointly and respectfully submit that the proposed settlement reflected in the Stipulation is

fair and reasonable under the circumstances, and the parties will make all efforts to secure its approval by this Court.

The parties have agreed that under no circumstances can the terms of the Stipulation be deemed an admission by Holiday of any wrongdoing and that if litigation resumes, Holiday can contest Plaintiff's claims and allegations on any and all grounds.

**V.    ARGUMENT**

**A.    Legal Standard.**

Federal courts have held that the settlement of private actions for the payment of allegedly owed back wages pursuant to 29 U.S.C. § 216(c), or settlements containing waivers of FLSA claims, must be approved by a court. *Shea v. Ryla Teleservices*, No. 11-626, 2012 U.S. Dist. LEXIS 133304, at *7 (E.D. Cal. Sept. 18, 2012) (citing *Lynn's Food Stores*, 679 F.2d 1350 at 1353).[2]  The decision of whether to approve a collective action settlement is within the discretion of the Court.  *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). The Ninth Circuit has declared that a "strong judicial policy" favors settlement of collective and class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("If a settlement

---

[2] Indeed, the Eleventh Circuit's decision in *Lynn's Food Stores* "is widely accepted for the proposition that all FLSA settlements must be approved by the Department of Labor or a court."  *Fenn v. Hewlett-Packard Co.*, No. 11-244, 2012 U.S. Dist. LEXIS 181586, at **1-2 (D. Idaho Dec. 21, 2012).  While the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in these two ways, district courts in the Ninth Circuit have followed *Lynn's Food Stores.  See, e.g.*, *Khanna v. Inter-Con Sec. Sys.*, No. 09-2214, 2012 U.S. Dist. LEXIS 137651, 2012 WL 4465558, at *10-11 (E.D. Cal. Sept. 25, 2012); *Campanelli v. Hershey Co.*, No. 08-1862, 2011 U.S. Dist. LEXIS 93166, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011); *Lee v. Timberland Co.*, No. 07-2367, 2008 U.S. Dist. LEXIS 108098, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008); *Yue Zhou v. Wang's Restaurant*, No. 05-279, 2006 U.S. Dist. LEXIS 84397, at *1-3 (N.D. Cal. Nov. 9, 2006).

in an employee FLSA suit . . . reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"); *La Parne v. Monex Deposit Co.*, No. 08-302, 2010 U.S. Dist. LEXIS 131029, at *4 (C.D. Cal. Nov. 29, 2010) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

At the preliminary approval stage, courts do not make a final determination of fairness.  Instead, at this initial stage, "[t]o determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (conditionally certifying both a Rule 23 class and a collective action under the FLSA for settlement purposes only and noting that the court need only make a determination "that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."); *In re Traffic Exec. Ass'n–E. Railroads*, 627 F.2d 631, 634 (2d Cir.1980).[3]

---

[3] For purposes of final approval, courts in the Ninth Circuit have found that some or all of the following factors should be considered:  (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

**B.**    <u>**Procedure.**</u>

At this stage of the litigation, the Court need only determine whether the proposed settlement falls within the "range of possible approval." *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (N.D. Cal. 2007); *see also* Manual for Complex Litigation (Fourth) § 21.632 at 320 (citing *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 1996 U.S. Dist. LEXIS 5308, at *11 (N.D. Ill. Apr. 22, 1996)).  After preliminary approval, the Court will hold a final fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit objections to the proposed settlement or to opt out of it.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008).

Accordingly, at the first stage, courts have held that for purposes of both collective actions and Rule 23 class actions "the district court's role . . . 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"  *Stevens*, 2008 U.S. Dist. LEXIS 17119, at **12-13 (quoting *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)).

Precisely because Class Members will subsequently receive notice and have an opportunity to be heard on the settlement, the Court need not review the settlement in detail at this stage.  *Lynn's Food Stores*, 679 F.2d at 1355; *see also Khanna v. Inter-Con Sec. Sys.*, No. 09-2214, 2012 U.S. Dist. LEXIS 137651, at *10 (E.D. Cal. Sept. 24, 2012) (granting preliminary approval and stating, "[P]laintiff has presented very little information other than the proposed settlement and proposed class notice and has largely relied on the declaration of counsel … Plaintiff thus will need to provide more substantial evidence supporting the necessary inquiries at the fairness hearing.")  Simply put, when considering preliminary approval of a collective action settlement, courts have held that the

settlement need only reflect a "reasonable compromise over issues," that are "actually in dispute."  *Lynn's Food Stores*, 679 F.2d at 1354; *Yue Zhou v. Wang's Rest.*, No. 05-0279, 2007 U.S. Dist. LEXIS 60683, 2007 WL 2298046, at **2-4 (N.D. Cal. Aug. 8, 2007).

### C.   <u>The Parties' Settlement Falls Well Within The Range of Approval.</u>

As set forth above, the question presently before the Court is whether the proposed settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement.  *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079; *In re Amino Acid Lysine Antitrust Litig.*, 1996 U.S. Dist. LEXIS 5308, at *11.

Consequently, so long as the parties' settlement "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of [the] Plaintiff[] or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should approve the settlement and should grant preliminary approval and authorize distribution of the notice.  Manual for Complex Litigation Third (1997) § 30.41.  Moreover, there is a presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *See* 2 Newberg On Class Actions, § 11.41 at 90 (4th ed. 2002) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982)); *see also In re: Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

Here, there can be no question that all of the pertinent factors weigh heavily in favor of granting preliminary approval and authorizing distribution of the proposed notice.  First, and most importantly, the proposed settlement was the product of arm's-length bargaining.  *See* Declaration of David Medby ("Medby Decl.") at ¶ 18.  Plaintiff and the putative class were represented by experienced counsel.  *Id.* at ¶¶ 4-8; Declaration of Suzelle M. Smith ("Smith Decl.") at ¶¶ 1-3.

1   The mediation was conducted before an experienced mediator.  Medby Decl. at ¶

2   16-18; Rotman Decl. at ¶ 2.

3          The settlement provides for Class Counsel fees in the amount of

4   twenty-five percent of the maximum settlement amount, which Holiday expressly

5   does not oppose.  *See* Stipulation at ¶¶ 1.11.15. 2.8.1, 2.11.2.  This fee is consistent

6   with the "benchmark" award established by the Ninth Circuit.  *Paul, Johnson,*

7   *Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989); *see also Hanlon*,

8   150 F.3d at 1029 ("This circuit has established 25% of the common fund as a

9   benchmark award for attorney fees.").

10          No segment of the class is receiving unduly preferential treatment.  All

11   Class Members are subject to the same notice and claims procedures, settlement

12   formulas and eventual release of claims.  The settlement formula varies objectively

13   according to weeks worked by each Class Member within the Class Period.  With

14   respect to the Plaintiff's singular enhancement award, the award is limited and well

15   within the range of awards commonly provided in litigation of this nature.  *See, e.g.,*

16   *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. 07-0362, 2009 U.S. Dist.

17   LEXIS 101586, 2009 WL 3562871, at **13-14 (N.D. Cal. Oct. 27, 2009) (finding a

18   $5,000 incentive award "presumptively reasonable").  Indeed, given the modest

19   nature of the Enhancement Award, especially when compared to the overall

20   maximum amount of the settlement, there is nothing to suggest that this award is

21   improper or undermines the apparent fairness of the settlement.  Furthermore, unlike

22   the more limited releases applicable to the Class Members, the named Plaintiff will

23   be required to execute general releases of all known and unknown claims of every

24   kind.

25          The agreements concerning attorney fees and the Plaintiff's

26   Enhancement Award as well as all other aspects of the settlement agreement have

27   been fully disclosed to the Court.  The parties have submitted a copy of the complete

28   Stipulation with this motion, and the parties have (and hereby do) represent that

1    there are no other, undisclosed agreements concerning the conditions for this

2    settlement.  Medby Decl. at ¶ 19.

3            Finally, the proposed Class Notice and proposed form of distribution

4    are more than adequate.  The more stringent standard of Rule 23 requires that the

5    absent Class Members receive the "best notice practicable under the circumstances."

6    See Fed. R. Civ. P. 23(c)(2)(B).  The method and the content of the notice to class

7    members should be designed to fairly apprise them of the terms of the proposed

8    settlements and the options available to them.  *See, e.g.*, *Bowman v. UBS Fin. Servs.,*

9    *Inc.*, No. 04-3525, 2007 WL 1456037, at *1 (N.D. Cal. May 17, 2007); *McCubbrey*

10   *v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 67 (N.D. Cal. 1976).  Federal

11   courts have ruled that individual mailings to each Class Member's last known

12   address is a sufficient form of notice.  *See, e.g.*, *White v. Nat'l Football League*, 41

13   F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem Prods., Inc. v.*

14   *Windsor*, 521 U.S. 591, 618-20 (1997).

15           Here, the proposed Class Notice satisfies the Rule 23 standard.  As

16   explained above, in this case the proposed form of notice will be sent via first class

17   mail to the last known address of each Class Member, and prior to this mailing, the

18   Claims Administrator will take systematic efforts to update any invalid addresses.

19   The Claims Administrator will forward returned notices to the forwarding addresses

20   provided and, for notices returned because the address of the recipient is no longer

21   valid,  *i.e.*, the envelope is marked "Return To Sender," the Claims Administrator

22   will perform a standard skip trace in an effort to attempt to ascertain the current

23   address of the particular Class Member in question.  If such an address is

24   ascertained, the Claims Administrator will re-send the Notice.  The notice will

25   provide the details of the case and the proposed settlement and the specific options

26   available to Class Members.  In particular, it will inform each Class Member of the

27   settlement formulas and the number of Qualifying Work Weeks that he or she

28   worked, thereby permitting the Class Member to make an informed decision about

whether to submit an Opt In and Release Form or take other or no action.  Thus, it is clear that the proposed form of notice is adequate.

In sum, the parties jointly and respectfully request that the Court (a) grant preliminary approval for the proposed class action settlement; (b) grant conditional certification of the proposed settlement class; (c) authorize the mailing of the proposed class action notice; and (d) order the parties to meet and confer to schedule a "fairness hearing," *i.e.*, a hearing on the final approval of the settlement, consistent with the deadlines in the Stipulation.

## VI.   CONCLUSION

For the foregoing reasons, the parties jointly and respectfully request that the Court grant the instant motion.

Date:  May 8, 2013

GARCIA, ARTIGLIERE &
SCHADRACK
STEPHEN M. GARCIA
DAVID MEDBY

By: */s/ David Medby*

Attorneys for Plaintiff SALLIE CWIK

Date:  May 8, 2013

MUNGER, TOLLES & OLSON LLP
MALCOLM A. HEINICKE
MARJA-LIISA OVERBECK
JEFFREY M. OSOFSKY

By: */s/ Malcolm A. Heinicke*

Attorneys for Defendant HARVEST
MANAGEMENT SUB LLC